## NASH MOTOR SALES COMPANY v. NATIONAL LIBERTY INSURANCE COMPANY OF AMERICA.

Eastern Section.   February 11, 1928.

Petition for Certiorari denied by Supreme Court, May 26, 1928.

G. B. Murray, of Chattanooga, for appellant.
Joe Frassrand, of Chattanooga, for appellee.

THOMPSON, J. The Nash Motor Sales Company, of Chattanooga, Tennessee, sold a Chevrolet automobile to A. R. Singleterry and took from him a series of title retention notes as part of the purchase price. In the name of Singleterry as the assured, it procured a policy of theft insurance from the National Liberty Insurance Company providing that "loss, if any, shall be payable to assured and Nash Motor Sales Company as interest may appear." Later, Singleterry sold the car to Ralph Dukes who assumed the payment of the title retention notes which Singleterry had given to the Nash Motor Sales Company, and the insurance company issued a rider which was attached to the policy agreeing that Singleterry's interest be assigned to Dukes. Still later, but before Dukes had finished paying the notes the car was stolen and was never recovered. Thereafter Dukes assigned his interest in the policy or its proceeds to the Nash Motor Sales Company and it brought this suit against said National Liberty Insurance Company to recover upon said policy.

The defendant filed an answer making two defenses: First, that no proof of loss had been furnished as required by the policy; and, Second, that the policy provided that: "This entire policy shall be void unless otherwise provided by agreement in writing added hereto, if the interest of the assured in the subject of this insurance be or become other than unconditional and sole ownership; or in case of transfer or termination of the interest of the assured other than by death of the assured or in case of any change in the nature of the insurable interest of the assured in the property described herein either by sale or otherwise," whereas, the Clark Motor Company of McMinnville, Tennessee, had sold the car to O. K. Stafford who in turn, but without the knowledge or consent of the Clark Motor Company, had sold it to the Nash Motor Sales Company without having paid the title retention notes which he had given to said Clark Motor Company as part of the purchase price of the car and which title retention notes were still outstanding and unpaid in the hands of said Clark Motor Company, thus violating said provision of said policy, the insurance company not having agreed in writing thereto, etc.

The Chancellor on the final hearing held against both of these defenses and rendered a decree against the defendant insurance company for the face of said policy, i. e., $508.50, with interest in the sum of $10.17, and the costs of the cause. From this decree the defendant has appealed to this court, and has assigned errors predicated upon the overruling of its said two said defenses.

As to the first of these defenses or contentions, we simply quote with approval the following from the findings and opinion of the Chancellor which we thing is sufficient to cover the question:

"But W. B. Morgan, president of the complainant company, testifies in answer to direct questions 31, 34 and 35, that the next day

after the theft Dukes made out a proof of loss and that he (Morgan) took it to H. V. Keith, the agent of the defendant. This is exceedingly general, it is true and might have been subject to exception if exception had been made, but none was made and no representative of the defendant is introduced as a witness to contradict it. Therefore, I conclude that a proof of loss was in fact given which was sufficient.

"But aside from this, while the policy provides for the giving of proof of loss within sixty days from the date of the loss I find no provision in the policy for a forfeiture of the claim if the notice is not given within that time. In such case a notice given any time before the suit is brought is sufficient. Insurance Co. v. Whitaker, 112 Tenn., 153.

"But either on account of the notice aforesaid from Dukes or for some other reason the defendant made an investigation of this loss through its adjuster, Mr. Sam H. Cromwell, and on December 28, 1926, he wrote a letter to Dukes and complainant in which he denied liability for his company upon the policy upon the single ground that they nor either of them had title to the automobile at the time it was stolen. This letter appears as Exhibit 1 to the deposition of Mr. W. B. Morgan. By planting its claim of non-liability upon this ground alone, the defendant estopped itself from making the defense of a failure to furnish proof of loss."

The material facts bearing upon the second defense or contention are as follows:

On February 26, 1926, the Clark Motor Company of McMinnville, Tennessee, sold the car (a new Chevrolet touring car) to O. K. Stafford for $613. He paid all of the purchase price in cash except the sum of $175.67, for which he gave his negotiable promissory title retention note due one day after date. This note was in the usual form and provided on its face that the title to said car should be and remain in said Clark Motor Company until said note and interest should be paid in full. Stafford never paid any part of the principal or interest on said note, and it is still outstanding and unpaid in the hands of said Clark Motor Company.

On July 8, 1926, Stafford traded said car to the Nash Motor Sales Company, of Chattanooga, Tennessee, as a part of the purchase price of a Nash car which he bought from said company on that date. He represented to the officers of said Nash Motor Sales Company that there were no liens on said Chevrolet and that he held the title to it free and clear of all encumbrances, and said officers had no notice or knowledge of any kind of said title retention note which the Clark Motor Company was holding.

On July 8, 1926, said Nash Motor Sales Company sold said Chevrolet to A. R. Singleterry for the sum of $688. He paid $250 in cash and gave his twelve- negotiable promissory title retention notes for the balance. Each of said notes was in the sum of $36.50, and one note matured each month thereafter, etc., and each note provided on its face that the title to the car was retained in the Nash Motor Sales Company until the purchase price was paid in full. On that date, i. e., July 8, 1926, the policy in question was issued in the name of Singleterry as the assured but providing that "loss, if any, shall be payable to assured and Nash Motor Sales Company as interest may appear." This policy was delivered to and remained in the possession of the Nash Motor Sales Company.

On August 11, 1926, Singleterry, with the consent of the Nash Motor Sales Company, sold the car to Ralph Dukes. Dukes paid Singleterry $200 and assumed the payment of said series of $36.50 title retention notes which Singleterry had executed to said Nash Motor Sales Company. On that date, i. e., August 11, 1926, the insurance company issued a rider agreeing that Singleterry's interest in the car be assigned to Dukes, and this rider was attached to the policy. Dukes later paid to the Nash Motor Sales Company a total of $109.50 on the notes which he had assumed.

On September 17, 1926, the Clark Motor Company wrote the Nash Motor Sales Company a letter stating in substance that the Nash Motor Sales Company had traded the Chevrolet car, that the Clark Motor Company had sold the car on February 26, 1926, and that it would like to know who had possession of the car. What answer the Nash Motor Sales Company made to this letter does not appear.

On September 26, 1926, the Clark Motor Company wrote the Nash Motor Sales Company a letter saying that its Mr. Clark had seen Stafford; that Stafford had promised to pay the note but had left McMinnville without doing so; that the note had been executed on February 26, 1926, and was in the sum of $175.67, and bore interest at the rate of six per cent, and retained title in the Clark Motor Company until paid; and that the Clark Motor Company had no knowledge until a few days before that Stafford had traded the car to the Nash Motor Sales Company.

On September 30, 1926, the Nash Motor Sales Company sent a telegram to Stafford at McMinnville as follows: "Chevrolet traded us is mortgaged you must clear same immediately." Stafford replied to this telegram by letter as follows:

"Have your telegram. I'm sorry this has happened. I knew I owed $175 on a note, but did not know it was mortgage. I thought it was a straight note, but I will certainly fix it up in the next few days."

On October 5, 1926, the Nash Motor Sales Company wrote the Clark Motor Company a letter and enclosed a copy of the letter which it had received from Stafford. This letter of October 5th was as follows:

"We are enclosing copy of letter just received from Mr. O. K. Stafford, and if you will get in touch with him, we feel confident that he will take care of balance due."

On October 18, 1926, the car was stolen from Dukes, and it has never been recovered. A few days later one of the officers of the Nash Motor Sales Company told Mr. H. V. Keith, agent at Chattanooga for the defendant insurance company, that the Clark Motor Company held a title retention note on the car. This was the first notice or information the insurance company had of and concerning the Clark Motor Company's interest in or lien upon the car.

On October 30, 1926, the Clark Motor Company wrote the Nash Motor Sales Company a letter (we will correct the misspelled words) as follows:

"O. K. Stafford has failed to come up and pay as agreed. He has a house and lot here but has paid only a small sum on this and he asked me to see a real estate man and get him to sell this place for him and he found a buyer and asked him to come up and he failed to come up when he agreed.

"I think he is still at Tullahoma, but I have done all I can looks like with him as to collecting, so we would like to know where this Chevrolet is at and would like for you people to see what you can do with him, we will have to get you people to push him up or we will have to look to this car for ours."

The Nash Motor Sales Company answered this letter on November 2, 1926, as follows:

"Referring to your letter of October 30, regarding O. K. Stafford, we are very much surprised to learn that this party has not settled his account with you.

"We did sell a Nash Sedan to Mr. Stafford some time ago and traded in a Chevrolet touring car. The Chevrolet was sold in the next two or three days, and we now understand that this car has been stolen some thirty days or more ago.

"We have written Mr. Stafford advising him to take care of this account, as you will have criminal action against him if he fails to settle this account.

"If we can be of further assistance to you, do not hesitate to call on us."

On December 20, 1926, Dukes assigned his interest in the policy to the Nash Motor Sales Company, and on January 15, 1927, it instituted this suit to recover upon said policy.

It will be seen from the foregoing that at the time the Nash Motor Sales Company bought the car from Stafford, and at the time it sold it to Singleterry and took out the policy of insurance, and at the time Singleterry sold the car to Dukes, neither the Nash Motor Sales Company nor Singleterry nor Dukes had 'any notice or knowledge of the title retention note which the Clark Motor Company was holding. But at least from and after September 26, 1926, which was more than three weeks before the car was stolen, the Nash Motor Sales Company had knowledge of said title retention note, and it did not disclose the existence of said title retention note to the insurance company until after the theft of the car.

Neither the Nash Motor Sales Company nor Singleterry nor Dukes were personally liable to said Clark Motor Company for the payment of said title retention note because none of them had ever assumed its payment. Therefore, the loss of the car wiped out said indebtedness insofar as it concerned or affected them.

The Chancellor in holding that the existence of the outstanding title retention note of the Clark Motor Company and the lien thereof did not avoid the policy said:

"The retention of title by the seller in a conditional sale only gives him a lien. The conditional vendee is the equitable owner. Further, in the law of insurance the equitable owner is the sole and unconditional owner."

It is true that as between the vendor and vendee (where the title is retained in the vendor, etc.) the vendee is the equitable owner and the vendor has only a lien. Mfg. Co. v. Buchanan, 10 Cates, 251; Auto Co. v. Bicknell, 2 Thompson, 493; Railroad v. Lumber Co., 3 Thompson, 380.

It is also true that the equitable owner is regarded as the sole owner and that mortgages and liens do not violate the sole ownership provision of insurance policies. Catron v. Tenn. Ins. Co., 6 Humph., 176; Delahay v. Memphis Ins. Co., 8 Humph., 684; Manhattan Ins. Co. v. Barker, 7 Heisk., 504; Ins. Co. v. Crockett, 7 Lea, 725; Light & Co. v. Ins. Co., 21 Pickle, 480; Ins. Co. v. Estes, 22 Pickle, 472; Ins. Co. v. Whitaker, 4 Cates, 151.

But the latter holding is upon the ground that after the loss or destruction of the property insured the mortgage indebtedness still remains and that the insured, therefore, has as much interest in protecting the property as if there were no encumbrance on it. For instance, in Catron v. Tenn. Ins. Co., 6 Humph., 184, the court said:

"But we do not perceive how the encumbrance on the plaintiff's property could be considered as material to the risk; the destruction of the house did not extinguish the mortgage debts, so that he was interested in the full amount of the value of the property insured."

In Delahay v. Memphis Ins. Co., 8 Humph., 684, the court said:

"A mortgage or deed of trust is only a security for the debt, and if the property be destroyed, the debt remains; so that the assured has as much interest in protecting the property as if there were no encumbrance on it."

In Insurance Co. v. Crockett, 7 Lea, 725, which is regarded as being the leading case on the point or question involved in the case at bar, the court quoted the above from Delahay v. Memphis Ins. Co., supra, and then said:

"It is not questioned but that the insured had an insurable interest in this property, and it is equally certain he had a complete equitable title, and was as much interested in the preservation of his dwelling as if there had been no lien on the lot on which it stood."

In all of our cases holding that a mortgage, lien or other encumbrance did not violate the sole ownership clause of the policy sued upon the insured had either contracted or assumed the mortgage indebtedness and was personally liable for it after the destruction or loss of the property, and therefore had as much interest to protect the property as he would have had had the property not been encumbered.

But in the cause at bar neither the Nash Motor Sales Company nor Singleterry nor Dukes were liable to the Clark Motor Company on its title retention note which constituted the lien, and they therefore did not have the same interest to protect the car that they would have had had the lien of said title retention note not existed.

Suppose said car had been worth $500, and the amount of the note which the Clark Motor Company was holding had been $500. The Clark Motor Company note being a prior lien equal in amount to the value of the car, neither Dukes nor the Nash Motor Sales Company would have had any substantial interest in the car which they would have been interested in protecting.

In our opinion the case at bar is clearly distinguishable from the cases cited above, and the lien of the title retention note of the Clark Motor Company did violate the sole ownership clause of the policy. And the Nash Motor Sales Company having had knowledge of said lien for a period of at least three weeks prior to the theft of the car without disclosing the existence of said lien to the insurance company, is not entitled to recover under the policy.

The decree of the Chancellor will, therefore, be reversed and the cause will be dismissed at the cost of said Nash Motor Sales Company.

All concur.